UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SECURITIES AND EXCHANGE COMMISSION,

          Plaintiff,

  - against -

EDUARDO HERNANDEZ,
    also known as "Ghost,"
CHRISTOPHER FLAGG,
    also known as "Venus,"
DAQUAN LLOYD,
    also known as "Payday," and
COREY ORTIZ,
    also known as "Jefe,"

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

23 CV 8110 (GRB)

GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF
APPLICATION TO INTERVENE AND TO STAY CIVIL PROCEEDINGS

BREON PEACE
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

JONATHAN P. LAX
SARA K. WINIK
Assistant U.S. Attorneys
  (Of Counsel)

## PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of its motion to intervene in the above-captioned civil case (the "Civil Case") and to stay civil proceedings because of the pendency of the parallel criminal case, United States v. Eduardo Hernandez et al., No. 23-CR-428 (GRB) (the "Criminal Case"), which has been filed in this district. The same underlying facts are at issue in both the civil and the criminal matters and notice was provided on the docket at the two cases are related. (See Civil Case, Docket No. 7; Criminal Case, Docket No. 27).

A stay of proceedings is appropriate because the government's motion is timely and the same alleged fraudulent schemes are at issue in both the Civil and Criminal Cases. Moreover, a stay is necessary as the defendants should not be permitted to use civil discovery in the Civil Case to avoid the restrictions on criminal discovery that would otherwise pertain to them in the Criminal Case. A stay is also necessary to promote judicial economy. Accordingly, the United States respectfully requests that the Court: (1) permit the government to intervene pursuant to Federal Rule of Civil Procedure 24; and (2) order, pursuant to the Court's inherent power, that proceedings in the Civil Case be stayed until the conclusion of the related Criminal Case.

Because no counsel for the defendants has filed a notice of appearance in the Civil Case and each of the defendants is also a defendant in the parallel Criminal Case, the government has not sought the defendants' position on this motion for a stay of the Civil Case. The Securities and Exchange Commission ("SEC") does not oppose the government's intervention and motion for a stay.

For the reasons discussed below, the Court should grant the motion to stay the Civil Case.

2

FACTUAL BACKGROUND

I.     The Criminal Case

On October 27, 2023, a grand jury sitting in the Eastern District of New York returned a two-count Indictment charging Eduardo Hernandez, also known as "Ghost," Christopher Flagg, also known as "Venus," Daquan Lloyd, also known as "Payday," and Corey Ortiz, also known as "Jefe," with conspiracy to commit securities fraud and conspiracy to commit money laundering.  (See Criminal Case, Docket No. 1).  Specifically, the Indictment alleges that between December 2018 and January 2023, the defendants engaged in a scheme to defraud a global financial services company of millions of dollars of short-term cash advances, called "Instant Deposits."  The Instant Deposits were intended to enable legitimate investors to immediately trade in their brokerage accounts without having to wait for an incoming wire transfer to clear.  But, to gain access to millions of dollars of Instant Deposits, which were typically capped at $5,000 per account, the defendants established a multi-state recruitment network through which the defendants opened hundreds of fraudulent accounts held in the names of straw account holders, or "Losing Accounts."

As alleged in the Indictment, the defendants repeatedly used the "Instant Deposits" available to the Losing Accounts to buy thinly traded and highly speculative stock options at above-market prices.  Selecting these virtually worthless stock options enabled the defendants to match their bids in the Losing Account with offers to sell the same overpriced stock options initiated by other brokerage accounts, or "Winning Accounts," that were also controlled by the defendants and their conspirators.  In effect, the defendants transferred the Instant Deposits from the Losing Accounts to the Winning Accounts by way of fraudulent securities transactions.

3

   Meanwhile, the incoming wire transfers supposed to cover the Instant Deposits in the Losing Accounts had purposely been initiated by the defendants from bank accounts that had little or no balance. These wire transfers, therefore, failed to clear, but not before the defendants drained the Instant Deposits, leaving the accounts with negative balances and worthless options. The defendants then laundered the stolen funds through multiple electronic banking platforms. In total, the defendants recruited dozens of individuals to engage in their fraudulent scheme and stole more than $2 million.

II. <u>The Civil Case</u>

   On October 31, 2023, the SEC filed a complaint (the "SEC Complaint") in the Civil Case charging the defendants with securities fraud premised on largely the same conduct as that alleged in the Criminal Indictment. (<u>See</u> Civil Case, Docket No. 1).

ARGUMENT

POINT ONE

INTERVENTION IS APPROPRIATE

I. <u>Applicable Law</u>

   Rule 24 of the Federal Rules of Civil Procedure provides that a party may intervene in a civil action either as a matter of right or on a permissive basis. Either avenue justifies intervention by the United States in the present action. <u>See</u> <u>In re Air Cargo Shipping Servs. Antitrust Litig.</u>, M.D.L. No. 1775, No. 06-MD-1775, 2010 WL 5027536, at *1, *3 (E.D.N.Y. Dec. 3, 2010) (in granting motion, noting that, "[w]hether as of right under Rule 24(a) or by permission under Rule 24(b), courts in the Second Circuit have routinely granted motions made by prosecuting authorities seeking to intervene in civil actions for the purpose of obtaining stays of discovery").

4

Federal Rule of Civil Procedure 24(a) provides that a person may intervene as of right when the applicant:

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a). Intervention is appropriate under Federal Rule of Civil Procedure 24(a) if the application is timely, the party has an interest in the transaction that is the subject of the action, the action may impede the party's ability to protect that interest, and the party's interests are not adequately represented in the action. See Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n, 471 F.3d 377, 389 (2d Cir. 2006); Cascade Natural Gas Co. v. El Paso Natural Gas Co., 386 U.S. 129, 132-36 (1967) (permitting State of California to intervene under Rule 24(a) in antitrust case to protect state's "interest" in promoting competition in California).

Additionally, a court may permit intervention when an applicant files a timely motion and has a "claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2). Intervention under Federal Rule of Civil Procedure 24(b) is "wholly discretionary with the trial court." U.S. Postal Service v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978). In exercising their discretion, courts consider the nature and extent of the intervener's interests, whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties, and whether the interests of the proposed intervener are adequately represented by the existing parties. See SEC v. Platinum Mgmt. (NY) LLC et al., No. 16-CV-6848 (DLI), 2017 WL 2915365, at *3 (E.D.N.Y. July 7, 2017) (granting permissive intervention because there was "significant overlap" between the civil proceeding and the criminal case and "[b]oth actions share common legal and factual questions"); SEC v. Shkreli, No. 15-CV-7175 (KAM), 2016 WL 1122029, at *3 (E.D.N.Y. Mar. 22, 2016) (granting permissive intervention

because there were "significant overlaps between the SEC complaint and the indictment in the criminal case" and "[b]oth actions share a great number of common legal and factual questions"); Berroyer v. United States, 282 F.R.D. 299, 302-03 (E.D.N.Y. 2012) (same); Miller v. Silbermann, 832 F. Supp. 663, 673-74 (S.D.N.Y. 1993) (same).

II.     Discussion

Permitting the United States to intervene in this case under Rule 24 is appropriate. The government's motion to intervene is timely, as it is being filed before any discovery has taken place in the Civil Case and no party has suffered prejudice. Moreover, as demonstrated above, the same alleged fraudulent scheme is at issue in both the Civil Case and the Criminal Case.

When prosecutors have advised courts that they are conducting criminal prosecutions or investigations of individuals involved in a pending civil action, the courts have routinely permitted the government to intervene to request a stay of proceedings or discovery in the ongoing civil cases. See, e.g., SEC v. Chestman, 861 F.2d 49, 50 (2d Cir. 1988) (permitting government intervention to seek stay of civil discovery in SEC action pending completion of a criminal investigation involving the same underlying facts was not an abuse of discretion under either Rule 24(a) or Rule 24(b)); see also SEC v. Doody, 186 F. Supp. 2d 379, 381 (S.D.N.Y. 2002); Bridgeport Harbour Place I, LLC v. Ganim, 269 F. Supp. 2d 6, 8 (D. Conn. 2002); SEC v. Downe, No. 92 Civ. 4092 (PKL), 1993 WL 22126, at *11 (S.D.N.Y. Jan. 26, 1993); Twenty First Century Corp. v. LaBianca, 801 F. Supp. 1007, 1009 (E.D.N.Y. 1992).

Intervention is warranted as a matter of right under Rule 24(a)(2) in light of the strong interest of the government and the public in the enforcement of criminal laws. See, e.g., Cascade Natural Gas Co., 386 U.S. at 132-36 (permitting intervention as of right by State in antitrust proceedings because of public interest in effective competition); SEC v. Realty &

Improvement Co., 310 U.S. 434, 458-60 (1940) (SEC should have been permitted to intervene in bankruptcy proceeding because resolution of that proceeding might "defeat the public interests which [the SEC] was designated to represent"). That interest may be substantially impaired if civil proceedings are allowed to continue in this matter before the resolution of the Criminal Case, as explained further in Point II below.

Courts have specifically recognized that the government "has a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter." Chestman, 861 F.2d at 50; see Morris v. Am. Fed'n of State, County & Mun. Employees, No. 99 Civ. 5125 (SWK), 2001 WL 123886, at *1 (S.D.N.Y. Feb. 9, 2001) (permitting District Attorney to intervene in civil action to request stay of discovery); Bd. of Governors of Fed. Reserve Sys. v. Pharaon, 140 F.R.D. 634, 638 (S.D.N.Y. 1991) (same); First Merchs. Enter., Inc. v. Shannon, No. 88 Civ. 8254 (CSH), 1989 WL 25214, at *2-*3 (S.D.N.Y. Mar. 16, 1989) (allowing United States Attorney to intervene in civil action).

Intervention is also warranted as an exercise of this Court's discretionary authority because the defendant is charged with engaging in the same scheme as are alleged in the Criminal Case. Indeed, there is substantial overlap in the core factual allegations underlying this action and the factual questions that likely will be resolved in the Criminal Case – namely, whether the defendants charged in both the Civil and Criminal Cases conspired to commit securities fraud and money laundering through fraudulent trading using the available "Instant Deposit" feature. The United States seeks only a stay of the proceedings, and its intervention will not alter the parties' respective positions. In fact, the criminal proceedings may benefit the civil parties, by bringing out facts relevant to the Civil Case and streamlining the ensuing litigation. Accordingly, the Court should permit the government to intervene.

POINT TWO

A STAY OF THE CIVIL PROCEEDINGS SHOULD BE GRANTED

I.   Applicable Law

District courts have the inherent authority to stay their own civil proceedings. See Landis v. N. Am. Co., 299 U.S. 248 (1936). A stay of proceedings and discovery in a civil case is particularly appropriate when, as here, a criminal indictment has already been returned. SEC v. McGinnis, Case No. 14 Civ. 6, 2016 WL 591764, at *3-*4 (D. Vt. Feb. 12, 2016) (discussing how "status of the case" factor weighs in favor of stay when criminal indictment is imminent or has been filed, and granting defendant's request for stay of parallel SEC action over SEC's objection); SEC v. One or More Unknown Purchasers of Securities of Global Indus., Ltd., 6500 (RA), 2012 WL 5505738, at *3 (S.D.N.Y. Nov. 9, 2012) (same, and granting government's motion for stay over defendant's objection); Doody, 186 F. Supp. 2d at 381 ("Once an indictment has been returned, the government often moves for and frequently obtains relief preventing a criminal defendant from using parallel civil proceedings to gain premature access to evidence and information pertinent to the Criminal Case."). Pursuant to this discretionary authority, courts may decide to stay civil proceedings, postpone civil discovery, or impose protective orders. See SEC v. Dressler, 628 F.2d 1368, 1375 (D.C. Cir. 1980).

In determining whether to exercise its discretion to stay the civil proceedings, the Court should balance the following considerations (referred to herein as the "six factors"):

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendants have been indicted; (3) the private interests of the plaintiff in proceeding expeditiously weighed against the prejudice to the plaintiff caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest.

Hicks v. City of N.Y., 268 F. Supp. 2d 238, 241 (E.D.N.Y. 2003); see also Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 99 (2d Cir. 2012) (recognizing district courts' application of the six factors in this context, noting that such balancing tests "act as a rough guide for the district court as it exercises its discretion," and opining that a court's decision whether to grant stay of a civil case "ultimately requires and must rest upon a particularized inquiry into the circumstances of, and the competing interests in, the case" (internal quotation marks and citation omitted)).

In many recent decisions in this Circuit and others, courts have granted a government motion for a complete stay of civil discovery in a parallel civil case, even over a defendant's objection. Platinum, 2017 WL 2915365, at *6; Shkreli, 2016 WL 1122029, at *7 ("The substantial overlap of the issues in the two actions; the post-indictment status of the criminal case; the SEC's lack of opposition to the government's proposed stay; the court's interest in the efficient resolution of the two proceedings; and the strong public interest in vindication of the criminal law all weigh in favor of a stay of the SEC's civil action."); SEC v. Dubovoy, No. 15 Civ. 6076 (MCA), Order Granting Mot. to Intervene & Stay Discovery, Docket No. 240 (D.N.J. Jan. 29, 2016) (granting government's request for complete stay of SEC action over objection of two fugitive defendants indicted in parallel criminal cases in District of New Jersey and Eastern District of New York); SEC v. One or More Unknown Purchasers of Sec. of Glob. Indus., Ltd., No. 11 Civ. 6500, 2012 WL 5505738, at *4–*6 (S.D.N.Y. Nov. 9, 2012) (granting government's request for complete stay of SEC action over objection of corporate defendant).

II. Discussion

    A. The Circumstances Presented in This Case Favor Granting the Requested Stay

This case presents nearly identical circumstances to those that other courts have found dispositive in deciding to grant a stay of a civil case during the pendency of parallel criminal proceedings: the significant overlap between the parallel criminal and civil proceedings; the fact

9

that a criminal case has been initiated, an indictment has been filed, and the government and the defendants are already engaged in plea negotiations; the public's interest in the "effective prosecution of those who violate the securities laws;" and the Court's interest in judicial economy and the desire to safeguard the criminal case from "the specific concerns against which the restrictions on criminal discovery are intended to guard," including the risk that disclosures in the parallel civil case beyond the scope permitted in the criminal case would lead to "perjury and manufactured evidence" and the "revelation of the identity of prospective witnesses." Global Indus., Ltd., 2012 WL 5505738, at *3-*6; see also Gordon, 2009 WL 2252119, at *5-*6; Nicholas, 569 F. Supp. 2d at 1069-73; Platinum, 2017 WL 2915365, at *7; Shkreli, 2016 WL 1122029, at *7.

For example, in Global Indus., Ltd., the government moved to intervene in an existing SEC proceeding due to a pending grand jury investigation in the Eastern District of New York of the corporate defendant in the SEC case, as well as other co-conspirators. 2012 WL 5505738, at *1. The government admitted that it did not yet know whether it would bring charges against the corporate defendant or others, but requested a complete stay of the SEC proceeding in order to ensure the integrity of the criminal investigation. Id. at *2. The court applied the six-factor test and concluded that a stay was warranted because of the overlapping issues between the civil and potential criminal matters, the efficient resolution of the case, the public's interest in the effective prosecution of those who violate the securities laws, and the risk of prejudice to the criminal case. Id. at *3-*6. The court therefore granted a complete stay of the SEC proceeding for a period of six months (the time the government stated it required to make a charging decision). Id. at *3, *6. In sum, the Global Indus., Ltd. case is one in which the court found that

10

a complete stay of the civil proceedings was warranted even before any criminal case was filed, circumstances far less favorable to the government than are presented here.

Here, the government has already obtained an indictment in the Criminal Case and is production of discovery is ongoing. Given the criminal indictment and the potential for pre-trial resolution of the Criminal Case, the Court should, as in <u>Global Indus., Ltd</u>., stay the Civil Case.

B.  <u>A Stay Will Prevent Unfair Prejudice to the Government</u>

A stay of the civil proceedings is appropriate to prevent the defendants from taking unfair advantage of broad civil discovery rules in the Civil Case to avoid the restrictions that would otherwise pertain to them as defendants in the Criminal Case.

The Second Circuit has recognized that the government has "a discernible interest in intervening in order to prevent discovery in [a] civil case from being used to circumvent the more limited scope of discovery [available] in [a] criminal matter." <u>Chestman</u>, 861 F.2d at 50. The vast difference between the respective rules that apply to discovery in civil and criminal cases is an important reason for staying civil proceedings and discovery in cases for which there are parallel criminal proceedings. See, e.g., <u>Bridgeport Harbour Place I, LLC</u>, 269 F. Supp. 2d at 10 ("Courts are very concerned about the differences in discovery afforded to parties in a civil case and those of a defendant in a criminal case."); <u>Twenty First Century Corp.</u>, 801 F. Supp. at 1010 (granting stay, in part, because "[a]llowing civil discovery to proceed . . . may afford defendants an opportunity to gain evidence to which they are not entitled under the governing criminal discovery rules"); <u>SEC v. Beacon Hill Asset Management LLC</u>, No. 02 Civ. 8855 (LAK), 2003 WL 554618, at *1 (S.D.N.Y. Feb. 27, 2003) (in context of request for civil stay of discovery due to pending criminal investigation, "the principal concern with respect to prejudicing the

11

government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases"); Phillip Morris Inc. v. Heinrich, No. 95 Civ. 0328 (LMM), 1996 WL 363156, at *19 (S.D.N.Y. June 28, 1996) (without stay, targets "may have an opportunity to gain evidence to which they are not entitled under criminal discovery rules"); Pharaon, 140 F.R.D. at 639 ("A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery") (citations omitted).

Unlike in a civil case, criminal defendants ordinarily are not entitled to depose prosecution witnesses, much less engage in the type of far-ranging inquiry permitted by the civil rules. See, e.g., Fed. R. Crim. P. 15(a). Nor are they able to obtain documents reflecting prior statements of witnesses before trial. See 18 U.S.C. § 3500; Fed. R. Crim. P. 16(a)(2). Likewise, the criminal discovery rules require production only of those documents which the government intends to offer at trial, are material to preparing the defense, or were obtained from or belong to a defendant. See Fed. R. Crim. P. 16(a)(1)(E).

Discovery in criminal cases is narrowly circumscribed for important reasons entirely independent of narrowing the information provided to defendants. Three major reasons regularly provided by courts in justifying narrow criminal discovery are: (1) that the broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured evidence; (2) that the revelation of the identity of prospective witnesses may create the opportunity for intimidation; and (3) that the criminal defendants may unfairly surprise the prosecution at trial with information developed through discovery, while the self-incrimination privilege would effectively block any attempts by the government to discover relevant evidence from the defendants. Nakash v. U.S. Dep't of Justice, 708 F. Supp. 1354, 1366 (S.D.N.Y. 1988); see also

Campbell v. Eastland, 307 F.2d 478, 487 n.12 (5th Cir. 1962); Raphael v. Aetna Cas. & Sur., 744 F. Supp. 71, 75 (S.D.N.Y. 1990); Founding Church of Scientology v. Kelley, 77 F.R.D. 378, 381 (D.D.C. 1977).

Here, discovery by the defendants of the SEC's investigative file would undoubtedly provide information to the defendants not otherwise discoverable in the Criminal Case (or at least not discoverable for many months, if not years, to come), thus enhancing a defendant's ability to manufacture evidence or tailor testimony, and otherwise severely hamper the government's ability to conduct an orderly investigation and prosecution. Further, in connection with the Criminal Case, each of the defendants has already stipulated and agreed to, and the Court has so ordered, various restrictions on the dissemination of discovery produced in the Criminal Case. (See Criminal Case, Docket No. 47 (Stipulation and Protective Order)).

As the government will suffer irreparable prejudice if the defendants are permitted to obtain broad civil discovery prior to the conclusion of the criminal proceedings, the requested stay should be granted.

C. A Stay Will Serve the Public Interest in Law Enforcement

It is well-settled that "a trial judge should give substantial weight to [the public interest in law enforcement] in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities." Campbell, 307 F.2d at 487; see also In re Ivan F. Boesky Sec. Litig., 128 F.R.D. 47, 48 (S.D.N.Y. 1989). Indeed, one court has observed that "where both civil and criminal proceedings arise out of the same or related transactions, the government is ordinarily entitled to a stay of all discovery in the civil action until disposition of the criminal matter." United States v. One 1964 Cadillac Coupe DeVille, 41 F.R.D. 352, 353 (S.D.N.Y. 1966).

13

Stays of proceedings and discovery in civil actions reflect a recognition of the vital interests at stake in a criminal prosecution. See, e.g., United States v. Kordel, 397 U.S. 1, 12 n.27 (1970) ("Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action, sometimes at the request of the prosecution."). Stays have been granted to halt civil litigation that threatened to impede criminal investigations  For example, stays have been granted to avoid interference in investigations relating to tax fraud, see, e.g., Campbell, 307 F.2d at 480, insider trading, see, e.g., Chestman, 861 F.2d at 50; Downe, 1993 WL 22126, at *1, insurance fraud, see, e.g., Raphael, 744 F. Supp. at 73, bank fraud, see, e.g., Pharaon, 140 F.R.D. at 639, customs violations, see, e.g., R.J.F. Fabrics, Inc. v. United States, 651 F. Supp. 1437 (U.S. Ct. Int'l Trade 1986), and immigration fraud, see, e.g., Souza v. Shiltgen, No. C-95-3997 MHP, 1996 WL 241824, at *1 (N.D. Cal. May 6, 1986).

Moreover, the prosecution in the Criminal Case will vindicate substantially the same public interest underlying the SEC's civil action, namely, preventing securities fraud and obtaining restitution for victims. See, e.g., Volmar Distrib., Inc. v. N.Y. Post Co., 152 F.R.D. 36, 39 (S.D.N.Y. 1993) (criminal prosecution would serve to advance public interest in preserving integrity of competitive markets); see also Shkreli, 2016 WL 1122029, at *7 (same).

D.      The Civil Parties Will Not Be Prejudiced by the Proposed Stay

The civil parties—namely the SEC and the defendants—will save significant resources by allowing the Criminal Case to proceed unencumbered by the burdens of civil proceedings and discovery. If the defendants are convicted in the Criminal Case, they will in all likelihood not proceed to trial in the Civil Case. See SEC v. Freeman, 290 F. Supp. 2d 401, 405 (S.D.N.Y. 2003) ("It is settled that a party in a civil case may be precluded from relitigating issues

14

adjudicated in a prior criminal proceeding and that the Government may rely on the collateral estoppel effect of the conviction in support of establishing the defendant's liability in the subsequent civil action.").

The defendants are also likely to choose to assert their Fifth Amendment rights against self-incrimination in the Civil Case. As detailed above, it would be unfair to permit them to obtain discovery while not requiring that they provide the same. A stay would also likely streamline discovery for the SEC. See Twenty First Century Corp., 801 F. Supp. at 1011 (noting that civil discovery due to pending criminal action "may streamline later civil discovery since the transcripts from the criminal case will be available to the civil parties"). The SEC and the defendants will therefore benefit from, as opposed to be prejudiced by, a stay of proceedings and discovery in the Civil Case.

### E. The Court Will Not Be Inconvenienced If It Stays Proceedings in the Civil Case

The Court will not be inconvenienced as a result of the requested stay. To the contrary, as stated above, should the Criminal Case result in convictions, it could greatly streamline the Civil Case. A stay of civil proceedings is also likely to narrow or eliminate factual issues in the civil litigation. See, e.g., In re Grand Jury Proceedings, 995 F.2d 1013, 1018 n.11 (11th Cir. 1993) ("Although stays delay civil proceedings, they may prove useful as the criminal process may determine and narrow the remaining civil issues."); United States v. Mellon Bank, 545 F.2d 869, 873 (3d Cir. 1976) (affirming a stay of discovery and stating: "[I]t might well have been that resolution of the criminal case would moot, clarify, or otherwise affect various contentions in the civil case."); Brock v. Tolkow, 109 F.R.D. 116, 119-20 (E.D.N.Y. 1985) (in granting a stay, noting that "the resolution of the criminal case might reduce the scope of discovery in the civil case or otherwise simplify the issues"). Such narrowing of the issues in the Civil Case will save the

15

Court's time and resources when the civil proceedings' stay is lifted at the conclusion of the criminal proceedings.

## CONCLUSION

In sum, the interests of the public, the government, the parties, and the Court strongly weigh in favor of granting the instant motion for a stay. In the interest of permitting the government to complete its prosecution in the Criminal Case, the government respectfully requests that its motion for a stay of proceedings in the Civil Case be granted.

Dated: Central Islip, New York
April 1, 2024

      Respectfully submitted,

      BREON PEACE
      United States Attorney
      Eastern District of New York

      /s/
      Jonathan P. Lax
      Sara K. Winik
      Assistant U.S. Attorneys
      (718) 254-7000

Cc: Clerk of the Court (GRB)
    Counsel of Record (by ECF)
    Pro Se Defendants via Criminal Case Counsel of Record (by e-mail)